IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-02567-WYD

DAVID PERITO,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of Social Security[1],

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff, born on April 24, 1968, filed applications for DIB and SSI in January 2006 claiming to be disabled since December 1, 2006.  (Transcript ["Tr."] 14, 199, 205.) Plaintiff alleged disability due to a neck and back injury, headaches, and pain due to a car accident.  (*Id.* 283.)  In a "personal pain questionnaire" dated January 25, 2008, Plaintiff asserted that he experienced numbness and sharp/severe pain in his neck and back, which was exacerbated by cold weather and various forms of movement,

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

including standing, walking and sitting. (*Id.* 300.) He stated he experienced constant pain, seven days a week, and noted no change in his condition over the past 12 months. (*Id.*)

After his claim was denied initially (Tr. 92), Plaintiff requested a hearing before an administrative law judge ["ALJ"]. (*Id.* 95.) The ALJ conducted a hearing in December 2009, taking testimony from both Plaintiff and an independent vocational expert. (*Id.* 41–59.) She then issued a decision on April 21, 2010, finding Plaintiff not disabled. (*Id.* 65–75.)

Plaintiff requested review of the ALJ's decision, and the Appeals Council granted that request. (Tr. 81.) The Appeals Council determined that the expert testimony from the hearing did not support the ALJ's conclusions regarding the vocational effects of Plaintiff's limitations. (*Id.* 81–82.). Thus, it remanded the case to the ALJ to obtain supplemental vocational evidence and issue a new decision. (*Id.* 82.)

The ALJ held another hearing in February 2011, taking testimony from a vocational expert. On March 2, 2011, the ALJ issued a new decision, again determining that Plaintiff was not disabled at the time of her earlier decision. (Tr. 23.) However, the ALJ was able to view additional medical evidence that had accrued since she had issued her first decision. Based on this evidence, the ALJ determined that Plaintiff had become disabled as of January 4, 2011. (*Id.*)

More specifically, the ALJ followed the five-step, sequential evaluation process for resolving disability claims. At step one, she determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15.) At step

two, she determined that Plaintiff had severe impairments of "right thoracic outlet syndrome, cervical sprain/strain with 'mild' brachial plexopathy, degenerative disc disease of the lumbar spine, status post lumbar discectomy and disc replacement, dysthymia and generalized anxiety." (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal the criteria of any of the listed impairments. (*Id.* 16). See 20 C.F.R. pt. 404, subpart P, app. 1 (2012).

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. She found that prior to January 4, 2011, Plaintiff could have performed work-related activities with the following restrictions: could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand/walk for no more than 45 minutes out of each hour during an eight-hour workday, could rarely bend, stoop, or twist; could perform routine and repetitive tasks (including jobs with a specific vocational preparation (SVP) code of 3 or lower); and should have no more than occasional interaction with supervisors, coworkers and the public. (Tr. 16.) The physical restrictions were as identified in Dr. Hughes' 2009 report. (*Id.* 16, 514.) With regard to Plaintiff's functioning from January 4, 2011 forward, the ALJ gave significant weight to a new 2011 opinion of Dr. Hughes, adopting physical restrictions identical to those in the doctor's report. (*Id.* 20, 572.)

At the fourth and fifth steps, the ALJ relied on vocational expert testimony to determine that after January 4, 2011, Plaintiff's limitations would have prevented him from performing both his past work and any other work available in significant numbers in the national economy. (Tr. 21–22.) However, she found that prior to January 4, 2011, Plaintiff could have still performed jobs such as small product assembler, mail

clerk, and collator operator. Thus, the ALJ concluded that Plaintiff was disabled under the Social Security Act as of January 4, 2011, but had not been disabled prior to that date. (*Id.* 23.)

Plaintiff requested review of this partially favorable decision (Tr. 7), and the Appeals Council declined. (*Id.* 1.) This made the ALJ's second decision the agency's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481 (2012). Plaintiff then timely commenced this action.

II. ANALYSIS

    A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

B.   The Merits of Plaintiff's Arguments

Plaintiff argues that the ALJ applied the wrong legal standard in assessing his RFC and that the RFC was not based on substantial evidence.  Plaintiff also argues that the ALJ applied the wrong legal standard in assigning weight to his treating provider Dr. Hughes' January 4, 2011 opinion, and that her findings were not based on substantial evidence.  Finally, Plaintiff argues that the ALJ erred in assessing his credibility.  I agree that the ALJ erred in connection with her decision, and that this case must be remanded for further fact finding.

I first address Dr. Hughes' 2011 report.  He opined therein that Plaintiff retains the RFC for uninterrupted sitting, standing, and walking up to an hour at a time, but he needs a break from sitting for 5 minutes before resuming sitting and a break of 10 minutes prior to resuming standing and walking.  (Tr. 572.)  Plaintiff can frequently lift up to 10 pounds, and occasionally carry up to 10 pounds.  (*Id.* 574.)  In an 8 hour day, he can tolerate up to 4 hours of seated work and 2 hours of standing and walking, but can only sit, stand or walk for one hour at a time without interruption.  (*Id.* 572, 575.)  Feeling and fingering bilaterally were limited to occasional, as were stooping, crouching, kneeling, and crawling.  (*Id.* 572, 576.)  Plaintiff should never climb ladders or scaffolds, should not have any exposure to unprotected heights, and was restricted in regards to mechanical parts or a motor vehicle.  (*Id.*)

The ALJ stated she gave "significant weight" to this opinion and assessed an RFC beginning on January 4, 2011, consistent therewith.  (Tr. 20.)  Based on this RFC, she found that Plaintiff was disabled beginning on January 4, 2011.  However, the ALJ

did not adopt Dr. Hughes' 2011 opinion as to Plaintiff's RFC prior to that date, even though Dr. Hughes stated that all the limitations noted therein were present since December 1, 2006. (*Id.* 578.) Instead, she gave "significant weight" to Dr. Hughes' earlier opinion of March 31, 2009, finding that the limitations opined to therein "remained the claimant's residual functional capacity until January 4, 2011." (*Id.* 20.) In the 2009 report, Dr. Hughes estimated that Plaintiff should rarely bend, stoop and twist and would be limited to "lifting and carrying at 20 pounds on an occasional basis and 10 pounds on a frequent basis" and "standing and walking to 45 minutes out of each hour during an 8-hour workday". (*Id.* 514.) Based on that assessment, the ALJ found that Plaintiff could perform a range of light work, and identified jobs at step five that Plaintiff could do. (*Id.* 16-22.) Accordingly, she found that Plaintiff was not disabled prior to January 4, 2011. (*Id.* 23.)

The ALJ did not discuss why she chose to reject Dr. Hughes' 2011 opinion in favor of his 2009 opinion as to Plaintiff's RFC before 2011. She merely noted that "Dr. Hughes based his new opinion on 2 evaluations of the claimant and a thorough review of the objective medical evidence in the record." (Tr. 20-21.) The ALJ also did not discuss the fact that Dr. Hughes opined in his 2011 report that the limitations he found existed as of December 2006, or that his 2011 report conflicts with his 2009 report in certain particulars. It is not clear whether the ALJ simply missed that portion of the 2011 opinion or whether she rejected it. Without an explanation of why the ALJ chose to ignore or reject the more significant findings in the 2011 report in favor of the 2009 report as to Plaintiff's RFC before January 4, 2011, I cannot conclude that

substantial evidence in the record exists to support the ALJ's determination. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (the ALJ's analysis must be "'sufficiently specific'" so as to allow for meaningful review) (quotation omitted); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir.2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

The ALJ's failure to discuss Dr. Hughes's opinion as it related back to 2006 was not harmless error. If Dr. Hughes' 2011 opinion had been given weight as to Plaintiff's RFC before the date of the report, the ALJ may have found Plaintiff to be disabled. Indeed, it appears that the jobs listed by the VE and relied upon the ALJ for her decision would have been eliminated due to the restriction to occasional fingering and handling. Plaintiff points out that all of the jobs offered in response to the hypothetical adopted as to the RFC required at least frequent fingering.

The Commissioner argues, however, that the ALJ had a good reason for not accepting the more restrictive findings in Dr. Hughes' opinion 2011 report—that Dr. Hughes had issued a lengthy, detailed, well-supported opinion closer to the alleged onset date, in 2009. She also argues that the ALJ reasonably determined that Dr. Hughes' 2011 opinion must primarily be based on the new physical examination, given the fact that Plaintiff's impairments were degenerative, and that the ALJ's findings were consistent with every other medical opinion in the record. However, the ALJ's decision must be evaluated "based solely on the reasons given stated in the decision", *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004), and not on speculation.

The Commissioner's arguments are post-hoc rationales that are improper because they usurp the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).[2]

Accordingly, I find that a remand is required so that the ALJ can properly consider Dr. Hughes' 2011 opinion as it pertains to Plaintiff's RFC before the date of the record. Moreover, there is another reason for reversal of the ALJ's decision in regard to Dr. Hughes' opinions—the ALJ's failure to adequately develop the record as to the conflict between his two reports. The law is settled that an ALJ must "'seek additional evidence or clarification'" from a medical source when the source's report "'contains a conflict or ambiguity that must be resolved.'" *Robinson*, 366 F.3d at 1084 (quoting 20 C.F.R. §§ 404.1512(e)(1) and 416(e)(1)).

Thus, on remand, the ALJ should contact Dr. Hughes and ask for an explanation of the conflict between his 2009 and 2011 reports. The conflict is particularly important in regard to Plaintiff's fingering and feeling impairments because it impacts the jobs the ALJ found Plaintiff could do prior to January 4, 2011. Not only did Dr. Hughes assess limitations in fingering and feeling in his 2011 report, Plaintiff notes that the record is replete with evidence that he experienced bilateral numbness and tingling in his hands and arms. (Tr. 42-43, 297, 300, 344, 350, 356, 404, 512, 526, 551, 556, 572.) These impairments must properly be considered by the ALJ. *See* 20 C.F.R. §§ 404.1545(e)

---

[2] The Commissioner's additional argument that Dr. Hughes' finding that the limitations found in his 2011 report date back to 2006 should not be credited because it was made in a fill-in-the-blank form is baseless. That form was part of a comprehensive evaluation of Plaintiff's impairments that were the subject of a written report. *See Anderson v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009).

and 416.945(e) (an ALJ must consider the limiting effects of all a claimant's impairments, even those that are not severe"); *see also* SSR 96–8P, 1996 WL 374184, at *5.

I also find that the ALJ erred in connection with her assessment of Plaintiff's credibility in connection with his complaints of pain. The record demonstrates more than adequate evidence of an impairment that should reasonably be expected to produce some pain. *See Luna v. Bowen*, 834 F.2d 161, 163-64 (1987). Indeed, the ALJ acknowledged this in finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 17.) However, the ALJ went on to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to January 4, 2011, to the extent they are inconsistent with the residual functional capacity assessment until that date." (*Id.*) I find that the ALJ's pain analysis was deficient.

If there is a loose nexus between the proven impairment and the alleged pain, as there certainly seems to be in this case, the ALJ must then consider all of the relevant evidence in determining whether Plaintiff is disabled by pain. *Luna*, 834 F.2d at 163. This "includes the medical data. . ., any other objective indications of the degree of pain, and subjective accounts of the severity of the claimant's pain." *Id.* Other factors that should be considered include "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed". . ., regular contact with a doctor, . . . the possibility that psychological disorders combine with physical problems . . ., the

claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165-66; *see also Thompson*, 987 F.2d at 1489.

In this case, the record is replete with objective findings that substantiate Plaintiff's complaints of pain. Further, the record demonstrates that Plaintiff was prescribed and sought several modalities of treatment, including lumbar injections, acupuncture, physical therapy, chiropractic care, and surgery to try and get relief from his pain, and that he used narcotic medications. While the ALJ discussed some of these things in passing, she erred in not explaining how these factors impacted her decision regarding Plaintiff's pain or whether she believed the pain impacted his ability to work. *See Carpenter*, 537 F.3d at 1268 (finding that the ALJ's pain analysis was "improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication").

Accordingly, I find that this case must also be remanded for a proper pain and credibility assessment. In making this assessment, the ALJ should keep in mind that minimal daily activities may not be relied on as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490. Further, the ALJ must be careful not to selectively apply the evidence when considering Plaintiff's activities and the record overall. *See Martinez v. Astrue*, 422 F. App'x 719, 728 (10th Cir. 2011); *Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999).

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly analyze the medical evidence submitted by Dr. Hughes, and failed to develop the record as to the conflict between his two reports. I also find that the ALJ erred in connection with assessing Plaintiff's pain. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  December 18, 2013

                                            BY THE COURT:

                                            s/ Wiley Y. Daniel
                                            Wiley Y. Daniel
                                            Senior United States District Judge